**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

MAYRA MARQUEZ ROBLES,

    Plaintiff,

        v.                           CIVIL NO.: 14-1831 (MEL)

HIMA SAN PABLO FAJARDO, et al.,

    Defendants.

## OPINION AND ORDER

### I.  PROCEDURAL BACKGROUND

Pursuant to 28 U.S.C. § 1332, on May 15, 2015, plaintiff, Mayra Marquez Robles, filed an amended complaint against Centro Médico Del Turabo, Inc. d/b/a Hospital HIMA San Pablo Fajardo ("HIMA Hospital") and HIMA Captive Insurance Co. (collectively "defendants") alleging negligence under Puerto Rico law. ECF No. 20.  Specifically, plaintiff claimed that, as a result of HIMA Hospital's negligence, she suffered a trip and fall resulting in a fractured right elbow, concussion of the right head and knee, right shoulder soreness, generalized body pain, headaches, and anxiety. Id. On January 29, 2016, defendants filed a motion for summary judgment. ECF No. 26. Plaintiff responded on April 11, 2016, and defendants replied on April 18, 2016.[1] ECF Nos. 51; 53.

### II.  LEGAL STANDARD

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ.

---

[1] Plaintiff's original response, filed February 15, 2016, was stricken from the record due to a myriad of formatting issues. ECF No. 49.

Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation.'" Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)).  For issues where the nonmoving party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts" in the record "that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995). The plaintiff need not, however, "rely on *uncontradicted* evidence . . . . So long as the plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan, 904 F.2d at 115 (citations omitted). There is "no room for

credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. P. R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

### III.   UNCONTESTED FACTS

On July 1, 2014, plaintiff was at HIMA Hospital to accompany her parents in obtaining medical records from her mother's physician and a prescription for her father. ECF Nos. 26-1, ¶ 4; 51-1, ¶ 4. Plaintiff arrived at the Outpatient Department ("OPD") of the hospital around 9:15 to 9:30 am. ECF Nos. 26-1, ¶ 6; 51-1, ¶ 6. After taking a queue number for her parents, plaintiff exited the OPD building. ECF Nos. 26-1, ¶ 9; 51-1, ¶ 9. At some point plaintiff tripped, which caused her to go onto tile and slip. ECF Nos. 26-1, ¶ 15; 51-1, ¶ 15. Plaintiff did not recall there being anything on the tiles that made her slip. ECF Nos. 26-1, ¶ 13; 51-1, ¶ 13. Plaintiff believes it was sunny that day. ECF Nos. 26-1, ¶ 14; 51-1, ¶ 14.

### IV.   ANALYSIS

Under article 1802, Puerto Rico's general tort statute, "[a] person who by act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann., tit. 31, § 5141. In order to prevail on a general tort claim under Puerto Rico law, a plaintiff must establish the following elements: "(1) evidence of physical or emotional injury, (2) a negligent or intentional act or omission . . . , and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause)." Vázquez-Filippetti v. Banco Popular de P.R., 504 F.3d 43, 49 (1st Cir. 2007) (citing Tórres v. KMart Corp., 233 F. Supp. 2d 273, 277-78 (D.P.R. 2002)). The parties are not currently disputing the first element.

3

The second element requires that defendant had a duty and there was a breach of that duty.

Vázquez-Filippetti, 504 F.3d at 49. "Under Puerto Rico law, a legal duty arises in one of three ways: (1) by a statute, regulation, ordinance, bylaw or contract; (2) as the result of a special relationship between the parties that has arisen through custom; or (3) as the result of a traditionally recognized duty of care particular to the situation." De-Jesus-Adorno v. Browning Ferris Indus. of Puerto Rico, Inc., 160 F.3d 839, 842 (1st Cir. 1998). "In most cases, the duty is defined by the general rule that one must act as would a prudent and reasonable person under the circumstances." Vázquez-Filippetti, 504 F.3d at 49 (citing Ortíz v. Levitt & Sons of P.R., Inc., 101 D.P.R. 290 (1973)). In this context, the applicable duty or standard of care has been articulated as follows:

> [A] landlord is not an insurer of the safety of business visitors, and his duty extends only to the exercise of reasonable care for their protection. There is no liability for harm resulting from dangerous conditions of which he does not know, and which a reasonable inspection would not have discovered, or from conditions from which no unreasonable risk was to be anticipated. Likewise, in the usual case, there is no obligation to protect the visitor against dangers which are known to him, or which are so apparent that he may reasonably be expected to discover them and be able to protect himself. The visitor is entitled, however, to assume that proper care has been exercised to make the premises safe for him, and he is not required, as in the case of a licensee, to be on the alert for possible defects.

Figueroa–Garcia v. United States, 364 F.Supp.2d 140, 143 (D.P.R.2005).[2]

In particular, for claims based on allegedly dangerous conditions on commercial property (premises liability claims), a plaintiff must show not only that a dangerous condition existed which

---

[2] Plaintiff argues that an additional duty exists under the Americans with Disabilities Act's accessibility guidelines as published in 2002 (hereinafter "ADAAG 2002"). Plaintiff cites to the appendix note to guideline 4.5.1 which states, "People who have difficulty walking or maintaining balance or who use crutches, canes, or walkers, and those with restricted gaits are particularly sensitive to slipping and tripping hazards. For such people a stable and regular surface is necessary for safe walking . . . ." ECF No. 51, 14. The guidelines, however, apply to "newly designed or newly constructed buildings and facilities and altered portions of existing buildings and facilities." ADAAG 2002, § 4.1.1. Plaintiff has made no showing, nor even alleged, that this building was constructed or altered after 2002. Further, the portion cited by plaintiff is an "appendix note." A plain text reading of the appendix note shows a clear contrast between this section's advisory tone and the substantive requirements found in the body (e.g., "Changes in level between ¼ in and ½ in (6 mm and 13 mm) shall be beveled with a slope no greater than 1:2."). ADAAG 2002, 4.5.2 & App'x 4.5.1. Plaintiff does not allege any violations of the substantive portions of the ADA requirements with respect to the fracture in the cement. Further, according to her deposition, plaintiff's only medical condition is seasonal allergies. She is therefore not within the class of persons the ADA was designed to protect. Thus, at this stage, the court declines to adopt the ADAAG 2002 as the applicable standard of care.

caused her injury, but also that defendant had either actual or constructive knowledge of the dangerous condition. Vázquez–Filippetti, 504 F.3d at 50; Mas v. United States, 984 F.2d 527, 530 (1st Cir.1993); Tórres, 233 F.Supp.2d at 278. "In order to establish constructive knowledge, a plaintiff must prove either the existence of the dangerous condition for an unreasonable or excessive length of time or, in the absence of evidence regarding time, the owner's insufficient prevention policy or failure to implement the policy." Carlo-Blanco v. Inmobiliaria Comercial, Inc., 59 F. Supp. 3d 399, 403 (D.P.R. 2014) (citing Ramos Rosado v. Wal–Mart, 165 D.P.R. 510, 513–515 (2005)). There is no evidence here regarding defendants' relevant policies or lack thereof. Thus, the plaintiff must provide evidence of how long the condition had been present. If plaintiff shows that the dangerous condition is a permanent one, the question then becomes whether defendants implemented a sufficient prevention policy or exercised reasonable care to forewarn visitors of the hazard. Marquez v. Casa de Espana de Puerto Rico, 59 F. Supp. 3d 409, 414 (D.P.R. 2014).

Defendants allege that plaintiff failed to show that a dangerous condition existed or that they had actual or constructive knowledge of any such condition. Thus, according to defendants, there was no breach of a duty of care as required by the second element of the negligence test. In the alternative, defendants argue the condition was readily apparent to the plaintiff and, as such, defendants had no duty to warn.

Although this is a close case, with the benefit of all reasonable inferences in her favor, plaintiff has ultimately produced by a razor thin margin sufficient evidence to advance beyond the summary judgment stage. According to plaintiff she was returning to the OPD when she tripped on a strip of concrete. ECF No. 26-2, 45:23–25, 46:19–25, 47:1–19. This stumble caused her to go onto the adjacent tiles and slip further. ECF Nos. 26-1, ¶ 15; 51-1, ¶ 15. Plaintiff provided photographs, taken by her father on the date of the incident, that allegedly show the area where it occurred. ECF

Nos. 51-4; 51-5; 51-6. Two of these photographs indeed show a line of fractured concrete that appears to slope slightly.[3] See ECF Nos. 51-5; 51-6. Defendants argue that the state of the concrete does not amount to a dangerous condition. There is no expert testimony here from either side to show that the fracture or slope are either compliant or non-compliant with building code parameters.[4] Thus, it cannot be categorically concluded that it does not constitute a dangerous condition.[5] See, e.g., Quinones Sepulveda v. United States, 329 F. Supp. 2d 260, 264-65 (D.P.R. 2004) (relying on expert testimony that a half-inch depression in a sidewalk did not constitute a breach of the duty of care because the sidewalk was "structurally competent and in above-average condition"). Although a cursory review of the photographs by no means settles the question as to whether the line of fractured concrete that mildly slopes constitutes an unreasonably dangerous condition for pedestrians, this inquiry is best left to the common sense scrutiny of jurors.

Defendant's remaining arguments are similarly unavailing. Defendant argues that because plaintiff walked past this area at least twice before the fall, she knew or should have known about the condition and taken measures to avoid her fall. Plaintiff testified in her deposition that, although the concrete could be seen from a simple view, she did not see "one particular spot" before the accident. ECF No. 26-1, 51:25, 52:1–2, 54:23–25, 55:1. It is not uncontested that plaintiff saw the fractured concrete before the incident, nor is it evident that the fracture is so readily apparent that plaintiff should reasonably have been expected to discover it and protect herself. As noted above,

---

[3] The third photograph shows visibly wet concrete; however, it is not evident from this picture that this wetness is in the same location as the concrete at issue. See ECF No. 51-4. Further, it is uncontested that plaintiff does not remember anything on the tiles making her slip. ECF Nos. 26-1, ¶ 13; 51-1, ¶ 13.

[4] Unlike with most defective design claims, negligent maintenance claims do not per se require expert testimony to be proven.

[5] Defendant also contends that plaintiff did not testify in her deposition about the existence of a fracture in the cement surface. Defendant is correct that plaintiff never used the term "fractured," but rather stated that she tripped on "a long line of concrete on the floor" that is like "a little slope." ECF No. 26-2, 46:19–25, 47:1-2. It cannot be concluded at this stage, particularly in light of the photographic exhibits, that the "line" identified by plaintiff was or was not a reference to the fracture in the cement.

there is "no room" at the summary judgment stage for the court to "superimpose his own ideas of probability and likelihood." Greenburg, 835 F.2d at 936.

It is similarly contested whether defendants' had constructive knowledge of the condition of the sidewalk. Plaintiff argues that the pictures show a structural defect that must have formed over time and thus a reasonable inspection would have revealed the condition. Defendants contend that plaintiff would require an expert witness to make this showing. Again, expert testimony could have conclusively addressed this issue. Plaintiff also did not present any evidence of either defendants' inspection policy or the actual inspections that were conducted. This is not, in this case, fatal. The photographs provided by the plaintiff show a fracture in the concrete, the nature of which may appear to a jury to have occurred over a period of time, rather than within a matter of minutes before her fall. A reasonable inference can be drawn from the images that the fracture was there for at least the amount of time that would have been revealed by inspection.

Therefore, there are genuine issues of material fact remaining that prevent the disposition of the case at this point. Defendant's motion for summary judgment (ECF No. 26) is accordingly DENIED.

IT IS SO ORDERED

In San Juan, Puerto Rico, this 6th of May, 2016.

s/Marcos E. López
U.S. Magistrate Judge